## IN RE JAMES T.*
## (3957)

HULL, DALY and BIELUCH, Js.

Argued December 10, 1986—decision released February 10, 1987

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Judith Merrill Earl,* assistant attorney general, with whom were *Laurie Adler,* assistant attorney general, and, on the brief, *Joseph I. Lieberman,* attorney general, *Robert W. Garvey,* assistant attorney general, and *Michael F. Zendan,* law student intern, for the appellant (commissioner of children and youth services).

*Pamela R. Hershinson,* with whom was *Jon L. Schoenhorn,* for the appellee (respondent father).

*Gerald Hecht,* with whom was *Dianne E. Joetz,* for the minor child.

HULL, J. This is an appeal by the commissioner of the department of children and youth services (DCYS) from the action of the trial court denying its petition to terminate the parental rights of Dorothy and Roger T.[1] The court found that although there was "no ongoing parent-child relationship," DCYS failed to prove that "to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child."[2] The

---

[1] Roger T. is the sole appellee in this action.

[2] General Statutes § 17-43a (b) provides: "The superior court upon hearing and notice, as provided in sections 45-61d and 45-61f, may grant such petition if it finds, upon clear and convincing evidence, that the termination is in the best interest of the child and that, with respect to any consenting parent, such parent has voluntarily and knowingly consented to termination of his parental rights with respect to such child or that, with respect to any nonconsenting parent, over an extended period of time, which, except as provided in subsection (c) of this section, shall not be less than one year: (1) The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; or (2) the parents of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child; or (3) the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being. Nonaccidental or inadequately explained serious physi-

court also found that DCYS did not meet its burden of proving that Roger T. (the respondent) had failed to achieve proper rehabilitation within the meaning of General Statutes § 17-43a (b) (2). From the judgment rendered, DCYS has appealed, claiming (1) that the court's conclusion that allowance of further time to establish or reestablish a parent-child relationship would not be detrimental to the best interests of the child was against the weight of the evidence, (2) that the trial court's conclusion that DCYS did not meet its burden of proving that the respondent had not and will not be properly rehabilitated was in error, and (3) that the court erred by engrafting its own concept of the "natural rights of parents" onto the statutory grounds for termination of parental rights.

The respondent filed a preliminary statement of issues[3] claiming (1) that the trial court did not have

cal injury to a child shall constitute prima facie evidence of acts of parental commission or omission sufficient for the termination of parental rights; or (4) there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child. If the court denies a petition for consent termination of parental rights, it may refer the matter to an agency to assess the needs of the child, the care the child is receiving, and the plan of the parent for the child."

[3] The preliminary statement of issues was filed pursuant to Practice Book § 3012 (now § 4013). DCYS claims that we should not consider these arguments, as they were not properly raised in a cross-appeal. We find, however, that the respondent properly raised these claims under Practice Book § 4013 (a) (1). That section provides that "if an appellee wishes to present for review alternate grounds upon which the judgment may be affirmed, or if he wishes to present for review adverse rulings or decisions of the court which should be considered on appeal . . . he shall file a preliminary statement of issues within fourteen days from the filing of the appellant's preliminary statement of the issues." See also *D'Arcy* v. *Shugrue*, 5 Conn. App. 12, 28, 496 A.2d 967, cert. denied, 197 Conn. 817, 499 A.2d 56 (1985). Since the respondent has complied with Practice Book § 4013 (a) (1), we will consider these claims.

jurisdiction to consider and rule on the petition to terminate parental rights, (2) that the court erred in finding that James T. was properly in the custody of DCYS, (3) that the court erred in finding that DCYS met its burden of proving that there was no ongoing parent-child relationship, (4) that the court erred in failing to strike the testimony of an independent psychiatrist, (5) that the court erred in finding that DCYS did not violate the respondent's civil and constitutional rights, and (6) that the court erred in finding that the respondent's due process rights had not been violated.

The record reveals the following. For many years, the respondent was emotionally and financially dependent upon a friend, Glenn B. Since 1970, the respondent has been hospitalized at least twice, once for alcohol detoxification and once for depression. After the birth of James T. in September, 1977, the respondent lived apart from Glenn B. for some time. During that time, he lived with his wife, Dorothy T., and their son, James T. They were supported by Dorothy T.'s father. The three moved in with Glenn B. when James T. was several months old.

In response to a referral, a DCYS social worker visited the home of Glenn B. She testified as follows. When she arrived, she found only the respondent and James T. at home. The house was dirty, and there were dog hairs and cobwebs throughout. The bedroom in which James T. was found was full of dirty dishes, dirty clothes and cigarette butts. James T. lay in a crib on a plastic mattress with no sheet. He appeared to have insect bites on his arms and legs. The respondent explained to her that he had no understanding of how to care for a child, and that therefore James T. lay in his crib all day until Glenn B. came home from work and cared for him.

On September 5, 1979, James T. was removed from the respondent's care. Days after his removal, he was admitted to the Danbury Hospital. He was diagnosed as being neglected. He had a weakness on his left side, caused by a chronic drainage of blood from a head injury of unknown origin.

James T. has been in foster care since 1979, with the exception of a one month period in 1980, during which he was in the care of his parents. They returned him to foster care at the end of one month, as they felt they were unable to care properly for him. Since December, 1980, James T. has been in the home of foster parents. Should James T. become free for adoption, his foster parents have expressed an interest in adopting him.

On December 20, 1980, DCYS filed a petition to terminate parental rights. On September 1, 1981, after a trial to the court, the petition was granted and the parental rights of Roger and Dorothy T. were terminated. Roger T. alone appealed from that decision. On May 3, 1983, the Supreme Court, in an unpublished order, set aside the judgment and remanded the case for a new trial, citing *Santosky* v. *Kramer,* 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982).[4]

A second trial was held in late 1984 and early 1985. At trial, two court-appointed psychiatrists, who had examined the respondent, testified. The psychiatrist who evaluated the respondent in 1981 testified that he was exaggeratedly dependent upon others, and that he was unable to accept any responsibility. He testified

[4] "In *Santosky* v. *Kramer,* [455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)], the United States Supreme Court held that due process requires the state to prove the allegations in a petition to terminate parental rights by clear and convincing evidence before those rights could be terminated. In light of that decision, there is error in each of these cases, [using a standard of 'fair preponderance of the evidence'] and a new trial is required in which the clear and convincing evidence standard of proof is applied." *In re Juvenile Appeal (83-AB),* 189 Conn. 58, 60, 454 A.2d 271 (1983).

further that the respondent's outlook for minimal independence was hopeless. The psychiatrist who evaluated the respondent in 1984 testified that his ongoing emotional problems impaired his ability to take charge of his personal life and that he was not in a good position to take responsibility for a young child.

An independent psychiatrist from the Yale Study Group also testified at trial. The court had previously ordered, by agreement of the parties, that all counsel should agree to the background material given the psychiatrist. Subsequent to the court order, the parties were unable to agree on the background material to be provided. The court then ordered that the background material provided to the psychiatrist be specifically limited to particular documents, but that the psychiatrist be permitted to interview a DCYS social worker. The court also stated that the psychiatrist would be allowed to obtain whatever information she deemed necessary.

The psychiatrist testified that James T. had "a few conscious memories" of meeting with his father, but that she did not consider these to constitute an ongoing parent-child relationship as James T. had "no feelings" for the respondent.

I

As a preliminary matter, the respondent has raised a jurisdictional question.[5] He claims that the trial court did not have jurisdiction to consider and rule on the petition because the maximum statutory period of temporary custody had expired.

General Statutes § 46b-129 (d) and (e) provide in relevant part: "(d) Upon finding and adjudging that any

---

[5] DCYS asserts that the respondent did not properly raise this issue. Subject matter jurisdiction, however, may be raised at any time. *Arseniadis* v. *Arseniadis,* 2 Conn. App. 239, 242, 477 A.2d 152 (1984).

child or youth is uncared-for, neglected or dependent, the court may commit him to the commissioner of children and youth services for a maximum period of eighteen months, unless such period is extended in accordance with the provisions of subsection (e) of this section . . . . (e) Ninety days before the expiration of each eighteen-month commitment made in accordance with the provisions of subsection (d) of this section and each extension made pursuant to the provisions of this subsection, the commissioner of children and youth services shall petition the court either to (1) revoke such commitment, in accordance with the provisions of subsection (g) of this section, or (2) terminate parental rights in accordance with the provisions of section 17-43a, or (3) extend the commitment beyond such eighteen-month period on the ground that an extension is in the best interest of the child." James T. was committed to the commissioner of DCYS on July 28, 1980. At that time, temporary commitments were for a period of two years. They were reduced to eighteen months in No. 82-181 of the 1982 Public Acts. Within the required period, on December 2, 1980, DCYS filed a petition to terminate parental rights pursuant to General Statutes § 46b-129 (e) (2). The petition was granted in the trial court. The Supreme Court subsequently remanded the matter for a new trial. As of the date of reversal, therefore, the original petition to terminate parental rights was still pending and continued in effect until the matter was retried and decided on January 25, 1985. On that date, the court stated that "until a further order of this court, the child, James T. is properly committed to the custody of the commissioner of DCYS." Because the extension of commitment can only be made for eighteen months, and because judgments in juvenile matters are not stayed pending appeal,[6] James T.'s commitment was extended

---

[6] Practice Book § 4046 (formerly § 3065) provides in relevant part: "In all actions, except where otherwise provided by statute or other law, pro-

to July 25, 1986. On May 2, 1986, eighty-six days before the expiration of that temporary commitment,[7] the petitioner made application to extend the commitment for another eighteen months. That application was granted and became effective on July 25, 1986. Consequently, James T. has been consistently in the custody of DCYS throughout these proceedings and the trial court did have jurisdiction to consider the petition.

## II

DCYS's first claim is that the trial court erred in concluding that the allowance of further time to establish or reestablish a parent-child relationship would not be detrimental to the child's best interest. DCYS asserts that this conclusion was inconsistent with the facts found.

One of the alternate grounds alleged in the petition to terminate parental rights was as follows: "There is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child, and to allow further time for the establishment or reestab-

---

ceedings to enforce or carry out the judgment shall be automatically stayed until the time to take an appeal has expired; if an appeal is filed, such proceedings shall be stayed until the final determination of the cause; and, if the case goes to judgment in the supreme court, until ten days after the decision is announced; but if the judge who tried the case is of the opinion that an extension to appeal is sought or the appeal is taken only for delay or that the due administration of justice requires him to do so, he may at any time, upon motion and hearing, order that the stay be terminated. *This section shall not apply to . . . juvenile matters brought pursuant to Chapters 31 through 40.*" (Emphasis added.)

[7] The ninety day filing deadline has been construed by this court to be directory rather than mandatory. *In re Adrien C.,* 9 Conn. App. 506, 512, 519 A.2d 1241 (1987). The failure of DCYS to file for an extension of commitment does not therefore deprive the court of jurisdiction to grant the extension.

lishment of such parent-child relationship would be detrimental to the best interest of the child."[8]

The trial court found that DCYS sustained its burden of proving that there was no ongoing parent-child relationship. The court relied on the following facts in reaching its conclusion. As early as October, 1979, James T. showed no discernible difference in his relationship with the respondent than in his relationship with other adults. As of 1984, James T. had only a general memory of having visited with the respondent, but could provide no specific memories of him.

The respondent disagrees with the court's conclusion and refers to *In re Juvenile Appeal (Anonymous)*, 177 Conn. 648, 420 A.2d 875 (1979). In that case, the court stated that "the ultimate question is whether the child has no present memories or feelings for the natural parent." Id., 670. The respondent ignores subsequent case law which vitiates his argument, however. The Supreme Court, in *In re Juvenile Appeal (Anonymous)*, 181 Conn. 638, 646, 436 A.2d 290 (1980), held that contact between parent and child did not preclude a finding that there is no ongoing relationship. Likewise, this court, in *In re Juvenile Appeal (84-6)*, 2 Conn. App. 705, 709, 483 A.2d 1101 (1984), cert. denied, 195 Conn. 801, 487 A.2d 564 (1985), stated that "the phrase 'feelings for the natural parent' refers to feelings of a positive nature."

In the present case, the record reveals that James T. had no feelings for the respondent, that his only memories are nonspecific. We will not retry the facts in this case. *Hirst* v. *Hirst*, 2 Conn. App. 348, 350, 478 A.2d 618 (1984). We conclude that the court could reasonably have found clear and convincing proof that there is no ongoing parent-child relationship between the respondent and James T.

---

[8] See General Statutes § 17-43a (b) (4).

The court also found that DCYS did not sustain its burden of proving that it would not be in the best interest of the child to allow time to reestablish a parent-child relationship. The court found facts, however, that contradict that conclusion. The court stated that "[t]he record has *clearly established* that it would not be in the present best interest to disturb the relationships that James T. has developed with his foster parents, that his day to day physical, emotional, moral and educational needs are now being met . . . ." (Emphasis added.) The court also stated that "it is unlikely that Mr. T. on his own can meet the day to day needs of his son" and that "there will always remain the strong possibility that the natural rights of Mr. T. to his son James T. must in the best interest of James T. be terminated." The court stopped short, however, of reaching the logical conclusion that it would be detrimental to allow further time to establish a parent-child relationship. In finding that DCYS had not met its burden of proof as to this statutory requirement, the court stated that "to deny James the chance to develop a new relationship with his natural father when the prior relationship even though imperfect, may have been largely destroyed by the state and which new relationship might at some future date grow to the point that Mr. T. could assume a responsible position in his son's life would be to violate the natural rights of parents in their child."

" 'We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported.' *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 222, 435 A.2d 24 (1980); *Knight* v. *Breckheimer,* 3 Conn. App. 489, 489–90, 489 A.2d 1066 (1985)." *In*

*re David E.*, 4 Conn. App. 653, 656, 496 A.2d 229 (1985). Our review of the record reveals that the trial court's decision was not legally correct and factually supported. First, the court erroneously concluded that DCYS prevented the respondent from developing a meaningful relationship with his son. General Statutes § 17-43a requires the trial court to make written findings regarding, inter alia, "the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the *unreasonable* act . . . of any other person . . . ." (Emphasis added.) The court stated only that "the relationship ceased to exist by positive actions of the DCYS . . . ." It concluded that DCYS "may have largely destroyed" the relationship. The court did not, however, make any findings of facts to legally support this conclusion. It failed to find facts sufficient to meet the statutory criterion that the respondent was prevented from maintaining a meaningful relationship with his child by an "unreasonable act" of DCYS.

The court also substituted its own "natural rights of parents" theory for the statutory requirement that it determine whether continuing James T. in temporary placement for purposes of attempting to establish a parent-child relationship would be detrimental to James T.'s best interest. In *In re Juvenile Appeal (85-3)*, 3 Conn. App. 194, 485 A.2d 1369 (1985), this court stated that "[p]arenting extends beyond biology, however, and the continuing welfare of the child is a matter of legitimate state interest. . . . Thus, although the relationship between parent and child is constitutionally protected, parental rights are not beyond limitation in the public interest. . . . The standards which apply to termination proceedings are clearly and unambiguously set forth . . . . [The] statute 'carefully sets out and delimits four situations that, in the judgment of the

legislature, constitute "countervailing interests" sufficiently powerful to justify the termination of parental rights in the absence of consent.' " (Citations omitted.) Id., 198–99.

We conclude that the court misapplied the facts to the statutory requirements, and that the conclusions drawn were inconsistent with the findings of fact. From the facts presented in the court's memorandum, to the effect that DCYS "clearly established" that it is not in James T.'s best interest to allow further time to establish a relationship, we conclude that DCYS did meet its burden of clear and convincing proof, and the petition should have been granted.

As we have found that the petition should have been granted under General Statutes § 17-43a (b) (4), we will not consider DCYS's claim of error as to the alternate grounds for granting the petition under General Statutes § 17-43a (b) (2).

### III

The respondent contends that the court erred in failing to strike the testimony of an independent psychiatrist. This contention is premised on the allegation that the psychiatrist had telephone conversations with a DCYS social worker which were not authorized by the court. The record clearly shows, however, that the court did authorize the interview.[9] We therefore conclude that the respondent's argument is without merit.

---

[9] The independent psychiatrist was referred as a member of the Yale Study Group. The respondent's trial counsel addressed his objections to the referral summary prepared by DCYS at a hearing on the matter. The court made the following ruling:

"The Court: I assume the father is going to be interviewed. So I assume his background, I assume could be objected to and get the information that way.

"Summaries of family involvement with DCYS, Miss Quinlan or the social workers to be interviewed?

## IV

The respondent claims that his civil and constitutional rights, and right to due process of law have been violated in that the trial court found that DCYS had destroyed the parent-child relationship, but refused to hold that these fundamental rights had been violated. In light of our decision regarding DCYS's alleged destruction of the parent-child relationship, we do not consider these claims.

There is error, the judgment is set aside and the case is remanded with direction to render judgment terminating the respondent's parental rights and appointing DCYS as statutory parent of James T.

In this opinion the other judges concurred.

"[Respondent's trial counsel]: I assume so.

"The Court: If they are going to be interviewed then I'll sustain your objection there and allow the parties in charge of the interview to ask the question [and] get whatever information they think is necessary."