[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Nature of Proceedings:
On November 17, 1989, the Department of Children and Youth Services (hereinafter referred to as "DCYS") filed coterminous petitions alleging that Bernard Pecor (hereinafter referred to as "Bernard") was a neglected and uncared for child pursuant to section 46b-120 of the Connecticut General Statutes, and that the parental rights of Bernadette D. Pecor and Reginald Pecor, Jr. (hereinafter "respondents") should be terminated pursuant to section17a-112 (b) of the Connecticut General Statutes. The original petition for termination of parental rights (hereinafter "TPR") set forth two grounds, and the amended petition approved on April 30, 1990 alleged additional facts.
1. Parental Commission or Omission
 That the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral, or emotional well-being.
2. No On-Going Parent/Child Relationship
 There is no on-going parent/child relationship, which means the relationship that ordinarily develops as a result of parents having met on a day to day basis for the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or re-establishment of such parent/child relationship would be detrimental to the best interests of the child. CT Page 815
Section 17a-112 (b)(3)(4) of the Connecticut General Statutes.
DCYS must prove at least one of these two grounds by clear and convincing evidence which must have existed for at least one year. The court may waive the one year requirement if it finds from the totality of the circumstances that a waiver is in the best interests of the child. Section17a-112 (c) of the Connecticut General Statutes.
Procedure
When a neglect and uncared for petition and a petition for termination of parental rights are filed coterminously, as DCYS has done in this case, the court must first address the allegations in the neglect and uncared for petition. These allegations must be proved by a fair preponderance of the evidence. Connecticut Practice Book, Sec. 1043. If the evidence does not support such a finding, the court must dismiss both petitions. If the court finds that the child is neglected and uncared for, it may proceed to decide the termination petition as one of several dispositional alternatives. If one of the termination grounds is proved by clear and convincing evidence, the court must consider whether such termination is in the best interests of the child by clear and convincing evidence, after considering the six factors under section 17a-112 (d) of the Connecticut General Statutes.
The allegations in the neglect and uncared for petition are as follows:
 1. The child was neglected in that he was being denied proper care and attention, physically, educationally, live under conditions, circumstances or associations injurious to his well-being.
 2. The child was uncared for in that his home could not provide the specialized care which his physical, emotional, or mental conditions required.
Section 46b-120 of the Connecticut General Statutes.
A child under this statute is any person under sixteen years of age.
On September 18, 1991, Judge Geen accepted the respondent father's affidavit in which he consented to the CT Page 816 termination of his parental rights, and an order was entered appointing DCYS his statutory parent.
On October 28 and 29, 1991, the trial on the petition to terminate the parental rights of the respondent mother was held, and DCYS called the following witnesses: Ms. Aleta Markham, the social worker assigned to this case; Dr. David Mantell, Ph.D., a licensed clinical psychologist; Dr. Jules Golden, M.D., a state licensed psychiatrist at Fairfield Hills Hospital; Dr. Ralph Welsh, Ph.D., a licensed clinical psychologist; and Sandy Rogers, the child's foster mother. The following exhibits were introduced by DCYS without objection
 Exhibit A — Psychiatric evaluation by Dr. Jules Golden, M.D.
 Exhibit B — Psychological evaluation by Dr. David Mantell, Ph.D.
 Exhibit C — Parent-child evaluation by Dr. Ralph Welsh, Ph.D.
 Exhibit D — Treatment plans prepared by Ms. Aleta Markham.
 Exhibit E — Termination of Parental Rights Social Study and Addendum prepared by Ms. Aleta Markham (Markham).
Exhibit F — Photograph of Bernard.
The respondent mother testified in her own behalf but called no witnesses. She was represented by counsel and a guardian ad litem in all these proceedings.
Adjudication of neglect petition: to April 30, 1990, the date it was amended.
The background facts are not in dispute. Bernard was born at Danbury Hospital on November 16, 1989. The following day, Ms. Aleta Markham, the DCYS social worker assigned to the case, obtained an ex parte order of temporary custody and had the child placed in foster care. On November 27, 1989, a hearing on that petition was held before Judge Geen, both parents appeared, testimony was presented, and the order of temporary custody remained in effect. On November 17, 1989, Ms. Markham had also filed a coterminous petition of neglect and termination of parental rights. She had known both of these respondent parents since July, 1987, and had provided CT Page 817 services to rehabilitate them for reunification with their older son, Reginald III, who had been adjudicated a neglected child by this court on September 21, 1987. She had prepared at least eight treatment plans and three service agreements to help them overcome their mental and behavioral disorders and provided them services for that purpose.
At the time Bernard was born, Mrs. Pecor had been a patient at Fairfield Hills Hospital for about five months, and she was still there when the coterminous petition was amended on April 30, 1990. She was diagnosed as suffering from chronic schizophrenia, a borderline personality disorder, and a mixed substance dependence to cocaine and cannabis drugs. Mr. Pecor, the respondent father, had been receiving psychiatric care for the past two years. He also had been convicted for narcotics possession and other criminal charges, was unemployed, and had no home, having spent time in jail for these convictions. Prior to the respondent mother's admission to Fairfield Hills on June 27, 1989, she had been an outpatient at the Danbury Hospital Mental Health Clinic for about ten occasions, was unemployed, and lived on social security disability benefits and state welfare assistance. Based on the testimony and social study prepared by Ms. Markham, and the exhibits in this file, and file No. 90-067 (Reginald Pecor III), the court finds that both respondents were unable to care for this child because of their psychiatric and behavioral disorders. Neither parent had a home to provide the child at this time; therefore, the child was homeless and uncared for. He was also a neglected child in that both parents were unable to care for him either physically or emotionally. The petitioner, DCYS, has proven by a fair preponderance of the evidence that Bernard was a neglected and uncared for child as defined in section 46b-120 of the Connecticut General Statutes and pursuant to section 1043 of the Connecticut Practice Book.
As to the TPR, proof of at least one of the asserted grounds by clear and convincing evidence is mandated as a matter of constitutional law. Santosky v. Kramer, 455 U.S. 745,769-70 (1982). Clear and convincing evidence has been defined as a level of persuasion lying between the usual civil requirement of proof by a fair preponderance of the evidence and the requirement in criminal cases of proof beyond a reasonable doubt, Cookson v. Cookson, 201 Conn. 229,234 (1986), and as proof sufficient to satisfy a court beyond an average certainty. In re Juvenile Appeal (84-3),1 Conn. App. 463, 468, cert. denied, 193 Conn. 802 (1984).
While parents do enjoy a constitutionally protected CT Page 818 right to raise and care for their own children, Stanley v. Illinois, 405 U.S. 645, 651 (1972), that right is subject to limitation by the state "when the continuing parens patriae interest of the state in the well being of children is deemed by law to supersede parental interests. "
The second ground claimed in the termination petition is that, as of the date the amended petition was filed, April 3, 1990, there was no on-going parent-child relationship between the respondent mother and Bernard. This ground, from the language of section 17a-112 (b)(4) of the Connecticut General Statutes has a two-pronged test. First, the absence of the relationship must be proven clearly and convincingly. An ongoing parent-child relationship is defined in the statute to mean "the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child. . . ." Second, clear and convincing evidence must also demonstrate that "to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child. "
An absence of a parent-child relationship contemplates situations where a child has never known his or her parent so that no relationship ever developed between them or where the child has definitely lost that relationship so that despite its former existence it has now been completely displaced. In re Juvenile Appeal (Anonymous), 181 Conn. 638, 645
(1980); In re Juvenile Appeal (Anonymous), 177 Conn. 648,670 (1979). Originally, the test for a lost or displaced relationship was stated as whether a child had present memories or feelings for the natural parent. In re Juvenile Appeal (Anonymous), 181 Conn., supra, 646; In re Juvenile Appeal (Anonymous), 177 Conn., supra. Later decisions have narrowed the test. The terms "memories of" and "feelings for" refer to specific memories and positive feelings. In re Rayna M., 13 Conn. App. 23, 34-35; In re James T.,9 Conn. App. 608, 616 (1987); In re Juvenile Appeal (84-6),2 Conn. App. 705, 709 (1984), cert. denied, 195 Conn. 801
(1985).
For the second prong, the important factor is the child's best interest. In re Juvenile Appeal (Anonymous), 181 Conn., supra, 646. The court is required to look to the future and determine whether it would be detrimental to the best interests of the child to allow further time for a parent-child relationship to develop. In re Juvenile Appeal (84-6), supra, 708. CT Page 819
Adjudication of TPR Petition — Amended as of April 30, 1990
The evidence, together with the record in this court regarding Reginald Pecor III (file No. 90-067), supports the following additional facts.
Ms. Markham had worked for over three years with this respondent to rehabilitate and reunite her with her older son, Reginald III, beginning in July, 1987. Unfortunately, she failed and her parental rights were terminated by this court on November 26, 1991. During this time, which included the two years since Bernard was born, the court again finds that she failed to comply with the eight treatment plans and three service agreements prepared for her by DCYS.
 1. She failed to take the required medication and attend counselling for her psychiatric and substance abuse disabilities.
 2. She did not adhere to the visitations DCYS arranged and only attended twenty-three out of a total of sixty for Bernard from January to April 10, 1991.
 3. Because of her behaviorial problems, she was not able to be employed and could not obtain housing.
 4. She was never able to bond with Bernard.
It was for these reasons that MS. Markham filed a coterminous petition to terminate her parental rights on Bernard, the day following his birth. Even though this respondent had failed to rehabilitate, she arranged for her to have weekly visitations between January to April, 1991. Initially, she showed some interest, but with time these visitations became more negative and disruptive. To find out the reasons for the deterioration, DCYS arranged a child-parent interaction study with Dr. Ralph S. Welsh, Ph.D., which took place in his office with a parent aide and the foster mother and the respondent. In his report (State's Exhibit C) and his testimony at trial, he stated that this visit was an emotional disaster for the child. This two year old child cried, scratched his face, and was frightened as the mother tried to interact with him. The session ended with the mother running out of the off ice in anger leaving the child confused and frightened. She yelled at him a CT Page 820 number of times during the interview and both the parent aide and the foster mother had to intervene to console and calm his fears. The foster mother testified that in her opinion Bernard does not know her as his biological mother. Dr. Welsh described this interview as a disaster and suggested that visitation be terminated. He concluded that it was highly doubtful that any type of relationship will ever develop between them.
The psychiatric evaluation for this respondent was done by Dr. Jules Golden, M.D. of Fairfield Hills Hospital. (State's Exhibit A.) His report and testimony concluded that this mother's psychological and emotional disorders during the past fifteen years made it highly unlikely that she could provide a stable and reliable home for the child or resume a responsible position in his life. The expert testimony of clinical psychologists and psychiatrists is entitled to great weight in termination proceedings. In re Nicolina T.,9 Conn. App. 598, 607 (1987).
From Ms. Markham's testimony, the court finds that this respondent mother was unable to interact positively with her child during these arranged visitations. In fact, from the time Bernard was one year old, these visits have a profound negative impact on his emotions. After visiting with his mother, he would have nightmares, bang his head against his crib, scratch himself, which would take him one to two days to return to his normal behavior according to the testimony of his foster mother. From the testimony of these experts and of Ms. Markham, and the mandated social study on file, the court finds that the evidence is clear and convincing that no child-parent relationship exists. In fact, Dr. Welsh was of the opinion that the foster parent is his psychological parent and Bernard considers her his mother. After these twenty-three visits, he does not recognize her even the last time they met on April 11, 1991. She has never nor is she ever likely to in the foreseeable future, according to Dr. Golden, meet any of his physical, emotional, moral, or educational needs. From this same evidence, the court finds that to allow further time to establish such a relationship would be detrimental to the best interests of this child. Both prongs of the test under this ground have been proven by clear and convincing evidence by DCYS, in fact, it was uncontraverted by the respondent.
DCYS alleged, on the first ground, that Bernard has been denied by an act or acts of omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being. The same evidence that DCYS presented to support the second ground, that there is no parent-child CT Page 821 relationship, can be used to establish any other ground. While mental illness, in itself, is not a basis for termination of parental rights, it may be properly considered when determining whether a parent's mental deficiency or illness renders them incapable or unable to provide the child with necessary care. In re David E., 4 Conn. App. 653; In re Theresa S., 196 Conn. 18. It is significant as to whether a person has the ability to parent a child. In re Nicolina T., supra, 607. The court finds that this mother has never been able to care for the child since birth, did not have the capacity to take care of her other four children, according to the mandated social study, and does not have the ability or capacity to take care of Bernard within any reasonable period of time. At the time of trial, she was still a mental patient at Fairfield Hills. She expected to be released to a group home in the near future and stated she hoped to be rehabilitated there, and with the medication and counselling, will be able to care for her son within a year. Dr. Mantell said that she should not be allowed visitation with him for at least two years of stabilizing her behavior without relapse. His prognosis was poor because her personality disorder is chronic, which is borne out by her past history of ten short term or outpatient treatments at the Danbury Hospital Mental Health Clinic since 1983, and three inpatient hospitalizations for her mental disorders at Fairfield Hills, about eighteen months during the past three years. In his opinion, this two year old child needs a permanent and stable home now. By waiting any longer, he will be diminished both emotionally and intellectually. He confirms Dr. Welsh's evaluation that it is very unlikely that any child-parent relationship can develop in the future. Ms. Markham's testimony and her social study established that over four and one-half years have elapsed and DCYS has given her extensive services and she was both unwilling and unable to care for a child. In her opinion, it is highly unlikely that she can rehabilitate in one year as she now claims, and recommends that her parental rights be terminated. In the case of In re Juvenile Appeal (83-CD), 189 Conn. 276, 292 (1983), the Supreme Court stated as follows: "Where appropriate, the agency can and must take unilateral action either to reunite families or to terminate parental rights as expeditiously as possible to free neglected children for placement and adoption in stable family settings." In In re Christine F., 6 Conn. 360, 368 (1986), the Appellate Court stated that "[f]amily integrity can be the goal of DCYS only when such a reunion will not endanger the safety of the child. "
The evidence is clear and convincing that DCYS has proven this first ground and that her parental rights should CT Page 822 be terminated for her acts of omission in caring for this child.
Even though DCYS has proven both of the two grounds for termination, the court must further find by clear and convincing evidence that it is in the best interests of this child that the respondents' parental rights be terminated after considering the six factors set forth in section17a-112 (d) of the Connecticut General Statutes. The court's findings are as follows:
1. Section 17a-112 (d)(1)
The timeliness, nature and extent of services offered or provided to help facilitate reunification.
DCYS prepared eight treatment plans and several service agreements for this respondent mother to rehabilitate beginning in July, 1987. 1 See file No. N. 90-067 Reginald Pecor III.) These included drug services and psychiatric treatment at Danbury Hospital Mental Health Clinic, couples' counselling, supervised visitation, and a parent aide. In Bernard's case, she was given about sixty supervised visits which were negative and emotionally devastating as previously found here in.
2. Section 17a-112 (d)(2)
The terms of any court order or agreement between the parent and the agency and the extent to which the terms have been met.
The court ordered psychological and psychiatric evaluations of the mother were done by Dr. David M. Mantell, Ph.D., and Dr. Jules Golden, M.D. Dr. Ralph S. Welsh did the psychological evaluation for Bernard.
3. Section 17a-112 (d)(3)
The feelings and emotional ties of the child with his mother.
According to Dr. Mantell's report (State's Exhibit C), and from his testimony at trial, the child does not know her as a parent and that his foster mother, MS. Sandy Rogers, is his psychological parent. She has cared for him for the past two years, or his entire life. She has provided for all his emotional, moral, physical and educational needs on a daily basis. Bernard is now bonded to her. CT Page 823
4. Section 17a-112 (d)(4)
Bernard was born on November 16, 1989, and is now two years and one month old.
5. Section 17a-112 (d)(5)
The respondent has been unable and unwilling, because of mental and behavioral disorders, to adjust her circumstances, conduct, and conditions to have the child returned to her in the foreseeable future. This mother fails to take required medication for her mental illness which has resulted in three inpatient hospitalizations at Fairfield Hills Hospital during the past two years to the time of trial on October 29, 1991. She lacks the parenting skills to do all that is required to meet the daily needs of this child.
6. Section 17a-112 (d)(6)
Neither DCYS nor any other person has prevented her
from developing or maintaining a relationship with this child nor was it due to economic circumstances. The agency has provided numerous services for her to rehabilitate her behavior beginning in July, 1987. She decided to cease accepting them in early 1989 by her own volition. Her visitations with Bernard were allowed to April, 1991 when Dr. Welsh said it was not in Bernard's best interests. Because her conduct resulted in both being institutionalized for long periods of time from 1989 to the present, her own conduct was responsible for Bernard remaining in foster care for the past two years.
After considering all the above factors, the evidence is clear and convincing that termination of her parental rights is in the best interests of this child. He deserves the care, nurturing and security of a secure and permanent family that is available to him through adoption.
Waiver of One Year Requirement
Section 17a-112 (c) of the Connecticut General Statutes provides that "[t]he court may waive the requirement that one year expire prior to the termination of parental rights if it finds from the totality of the circumstances surrounding the child that such a waiver is necessary to promote the best interest of the child." This record supports by clear and convincing proof that a waiver of the one year requirement is necessary to promote the best interests of the child. This child has been in foster care for over two years and should CT Page 824 not have to wait any longer to live in a safe and permanent home. It is the public policy of this state to protect every neglected child and provide a safe environment. Section17a-101 of the Connecticut General Statutes.
Disposition
The court will consider all of the evidence to October 29, 1991, the last date of the trial. The evidence is clear and convincing that termination of the respondents' parental rights is in the best interests of this child. After having lived with his foster parent for all of his life, he needs and is entitled to the security of having a permanent home and the security of adoptive parents which can be provided to him.
In this regard, Dr. David M. Mantell, Ph.D., a licensed clinical psychologist, examined the mother on July 17, 1991 and testified at trial on October 28, 1991 that her parental rights should be terminated. His testimony confirmed his written report dated July 19, 1991 (State's Exhibit E) in which he stated that the data obtained from this first evaluation is consistent with termination of parental rights. The basic reason is that the respondent suffers from a chronic mental disorder that requires institutional care and precludes her active and continuous involvement in child care activity. The nature of her disorder is such that were she to have access to a child, it is unlikely that she would be able to appropriately care for a child even for short periods of time. Dr. Mantell testified that it would take up to two years to stabilize her behavior even before visitation be considered, and stated that this two year old child needs nurturing now. Such delay, in his opinion, would diminish this child intellectually and emotionally. The court finds that it is not in Bernard's best interests to delay termination of her parental rights. Dr. Jules S. Golden, M.D., a psychiatrist at Fairfield Hills Hospital, testified at the trial of Reginald Pecor III, on August 5, 1991, that she suffers from major psychiatric disorders that have required three inpatient admissions at this hospital during the past thirty-six months and ten previous hospitalizations at Danbury Hospital. As of June 24, 1991, the diagnoses were schizo-affective disorder, bipolar type; polysubstance dependence, by history; borderline personality disorder. At this trial, on October 28, 1991, he confirmed his opinion that her mental illness is chronic and may last for her entire life. He stated that these long-standing psychological and emotional disorders, complicated by substance or drug abuse, have required frequent CT Page 825 hospitalizations. From these facts, he concluded that it is highly unlikely that she could ever resume a responsible position in the life of this child. The expert testimony of clinical psychologists and psychiatrists is entitled to great weight in termination proceedings. In re Nicolina T., supra, 605.
Therefore, it is ordered that the parental rights of Bernadette D. Pecor, the biological mother of Bernard Pecor, be and is hereby terminated. It is further ordered that the Commissioner of DCYS be appointed statutory parent pursuant to section 17-112 (1) of the Connecticut General Statutes for the purpose of placing the child in adoption as soon as possible. DCYS is ordered to submit a report, in writing, with this court, within ninety (90) days of the date of this judgment and, thereafter, not less than every six months until such adoption is finalized.
PETRONI, J.