[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
FINDINGS RE: PETITION FOR TERMINATION OF PARENTAL RIGHTS
The child's date of birth is June 30, 1987; he was committed to the care and custody of the Commissioner of the Department of Children and Youth Services (DCYS) as an uncared for child (specialized needs) on November 6, 1990. The mother of the child is Cynthia K., d/o/b January 16, 1963; the father is Clark W., d/o/b October 11, 1959. Respondent/mother has executed a written consent to terminate her parental rights. The instant petition alleges the consensual ground under General Statutes Section 17-112 (b) as a basis for termination of the mother's rights. With respect to respondent/father, the petition alleges statutory grounds under Section 17-112, (formerly Section 17-43a)(b)(1) (Abandonment) and (4) (No ongoing parent-child relationship). This termination petition was filed by DCYS on December 3, 1991.
Notice And Jurisdiction
Cynthia K.'s address is shown on the termination petition as 185 Whitney Street, Hartford; the return of service CT Page 4134 shows personal (in-hand) service on respondent/mother, which service was confirmed by the court on December 30, 1991.
Clark W.'s address is shown on the termination petition as simply "Springfield, Ma." Pursuant to the court's order of notice, publication was effected through legal advertisement in the Springfield Union-News on December 10, 1991; notice by publication was confirmed by the court on December 30, 1991. Respondent/father has not appeared.
Service has been effectuated in accordance with the requirements of law, and this court has jurisdiction to hear and adjudicate the instant petition. General Statutes Sections17a-112, 45a-716, and 45a-717.
Standard of Proof
The term "termination of parental rights" is statutorily defined as "the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and his parent or parents so that the child is free for adoption except that it shall not affect the right of inheritance of the child or the religious affiliation of the child." General Statutes Section 45a-707 (g). It is a judicial matter of exceptional gravity and sensitivity. Anonymous v. Norton, 168 Conn. 421, 430 (1975). Termination of parental rights is the ultimate interference by the state in the parent child relationship and, although such judicial action may be required under certain circumstances, the natural rights of the parents in their children "undeniably warrants deference and, absent a powerful countervailing interest, protection." Stanley v. Illinois, 405 U.S. 645, 651 (1972); In Re Juvenile Appeal (Anonymous), 177 Conn. 648, 671 (1979).
The integrity of the family unit is protected by theNinth Amendment and the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution. Stanley v. Illinois, supra. Both the child and the parent(s) have constitutionally protected interests in the integrity of the family. Santosky v. Kramer, 455 U.S. 75 (1982). And, the "rights of parents qua parents to the custody of their children is an important principle that has constitutional dimensions." See: In Re Juvenile Appeal, 187 Conn. 431, 435 (1982).
The constitutional guarantee of due process of law requires that the statutory ground(s) for termination of parental rights be established by "clear and convincing evidence, not merely a fair preponderance." Santosky v. Kramer, supra. Accordingly, the standard of proof as mandated by Conn. General Statute Section 17a-112 (b) and Conn. Prac. Bk. 1049 is "clear and CT Page 4135 convincing" evidence. See: e.g. In Re Juvenile Appeal (84-3),1 Conn. App. 463 (1984).
Termination of parental rights is in two stages: the adjudication and the disposition. The adjudicatory stage involves the issue of whether the evidence presented established the existence of one or more of the statutory grounds as of the date the petition was filed. In Re Juvenile Appeal (84-AB), 192 254, 262 (1984); In Re Nicolina T., 9 Conn. App. 598, 602 (1987); In Re Luke G., 40 Conn. Sup. 316, 324 (1985). Only upon establishment of one or more of the statutory grounds may inquiry be made regarding the ultimate best interests of the child. In Re Juvenile Appeal (84-AB), supra at p. 262. However, since Section 17a-112 (b) sets forth the statutory grounds for termination in the disjunctive, one ground only need by established for the granting of the petition. In Re Juvenile Appeal (84-BC), 194 Conn. 252, 258 (1984); In Re Nicolina T., supra.
Factual Findings
On December 30, 1991, respondent/mother appeared in court and executed a written consent to terminate her parental rights to her child, Corey W. The court thoroughly canvassed Cynthia K. regarding the written consent to terminate, and her right to counsel. The court found, in open court on the record (12/30/91), that respondent/mother executed the consent to terminate freely, intelligently, knowingly, and voluntarily, with a full understanding of the consequences thereof, and after a knowing, intelligent, informed, and entirely volitional waiver of the right to counsel. The court hereby finds that petitioner has established, by clear and convincing evidence, the consensual ground for termination of Cynthia K.'s parental rights under General Statutes 17-112 (b).
In June 1990, Cynthia K. contacted DCYS and requested placement of Corey W. The child had suffered a stroke at age three months, had become increasingly hyperactive, and required specialized attention. The mother expressed feelings of acute stress and anxiety in undertaking to deal with her son's very difficult, trying developmental and behavioral problems. Initially Cynthia K. indicated she would voluntarily terminate her rights, but then agreed to work with the Child and Family Services Family Reunification Program, Hartford, toward reunification; according to the Child and Family Services therapist, Cynthia attended counseling regularly, picked up her son on weekends, and made every effort to test herself to determine if she would be emotionally capable of raising this specialized needs child as a single parent. Corey W. is Cynthia K.'s second child; her first child, born in October 1983, had CT Page 4136 been previously placed in adoption. Cynthia K. is a high school graduate, is employed by a large bank, has recently been promoted to a Electronic Processor, and has recently moved from an efficiency apartment in Hartford to a large apartment which she shares with three others.
In April 1986, Cynthia K. met Clark W; on June 30, 1987, Corey W. was born. The parties never married, but resided together from September 1986 through April 1988, when Cynthia K. ended the relationship due to the father's asserted alcoholism and physical abuse. Very little information has been developed regarding Clark W.; documentation in the file discloses that he has never been married, did not graduate from high school, and was last known to be living somewhere in the Springfield, Mass. area. As stated, he has not appeared at all in these proceedings; it is reported that at one point the father stated to the DCYS worker that he had no objection to the Department's going forward to terminate his parental rights.[1] Clark W. has not seen the child since April, 1990; he has not visited with, telephoned, or sent any cards or letters to the child. Clark W.'s precise whereabouts have remained unknown.
The child, Corey W., d/o/b 6/30/87, has no siblings, suffered a mild stroke at age three months, and "now has developmental delays in all areas." In September 1990, as a result of negative behavioral patterns, the child spent several weeks in the Child's Psychiatric Emergency Service Unit, St. Raphael's Hospital, New Haven; a psycho-educational assessment recommended: (1) the child attend a pre-school special education class to address deficits; and, (2) the child continue with speech services, physical therapy, and occupational therapy. Prior to the mother's initially contacting DCYS (6/7/90), Corey had lived with his father for a period of approximately seven months, from September 1989 to April 1990; during that period, the child sustained certain physical injuries placing in question the quality of care, and degree of parental supervision, while the child resided in Clark W.'s residence. The child was returned to the mother, by the father, at Easter and, thereafter, was apparently placed in three different day care situations due to difficult behavioral problems. The uncared for/specialized needs petition was filed on September 28, 1990.
Corey W., now approaching five years of age, has been living in a Child and Family Services foster home and is progressing splendidly; the foster family has had experience with developmentally delayed children. The plan for Corey W. is the provision of a permanent home through adoption.
Adjudication CT Page 4137
General Statutes Section 17a-112 (b) delineates the alternative grounds for termination of parental rights. In order to grant a petition to terminate) the court must determine that an alleged statutory ground has been established by "clear and convincing" evidence; such degree of proof is constitutionally mandated. As stated, this TPR petition was filed December 3, 1991.
a) Respondent/Mother: Consent
The court finds that respondent/mother executed the written consent to terminate her parental rights to Corey W. freely, intelligently, knowingly, and voluntarily, with a full understanding of the consequences thereof, and after a knowing, intelligent, informed, and entirely volitional waiver of her right to counsel.
Section 17a-112 (b) states, in pertinent part: "The superior court upon hearing and notice . . . may grant . . [a termination] petition if it finds, upon clear and convincing evidence, that the termination is in the best interest of the child and that, with respect to any consenting parent, such parent has voluntarily and knowingly consented to termination of [her] parental rights with respect to such child . . ."
The court hereby finds, applying a clear and convincing standard of proof, that petitioner has established the consensual ground for termination, as alleged, under Section 17-112 (b).
b) Respondent/Father: Abandonment
Respondent/father has not seen the child since April 1990; he has not visited the child (or many any significant effort to do so), has not telephoned, written, sent cards or presents to the child. Clark W.'s whereabouts have remained unknown, and he has not appeared in these legal proceedings.
General Statutes Section 17-112 (b)(1) reads: "The superior court upon notice and hearing may grant . . [a termination] petition if it finds, upon clear and convincing evidence, that termination is in the best interests of the child and that . . . with respect to any nonconsenting parent, over an extended period of time, which . . . shall not be less than one year . . [t]he child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child . . ."
Since Clark W.'s return of the child to the mother CT Page 4138 in April 1990, he has not maintained any reasonable degree of interest, concern, or responsibility regarding Corey W.'s well-being; on the evidence, the father has had virtually no involvement whatsoever in the child's life for a protracted period exceeding one year. Unlike the common-law principle of abandonment applicable under the neglect provision of General Statutes Section 46b-120, the standard respecting statutory abandonment under Section 17a-112(b)(1) is "not whether the parents have shown some interest in their children"; rather "[c]ommon sense dictates that the parent's obligations toward . . [a] child go further than a minimal interest." (Emphasis is original). In re Rayna M., 13 Conn. App. 23, 37 (1987).
The court hereby finds, applying a clear and convincing standard of proof, that petitioner has established abandonment as a statutory ground for the termination of the parental rights of Clark W. to the child, Corey W.
 c) Respondent/Father: No Ongoing Parent-Child Relationship
Corey W. was born June 30, 1987; he resided with both the mother and father through April 1988, when the parents separated. In September 1989, when the child was two years, two months of age, he began living with father, and remained in his father's residence for approximately seven months (until April, 1990). At the time of the child's return to the mother's home in Mid-April 1990, he was approaching three years of age; as stated heretofore, the evidence indicates the child has had no contact with the father since April, 1990. The court fully recognizes the young age of the child during the aforesaid periods.
General Statutes Section 17a-112 (b)(4) provides, as follows: "The superior court upon hearing and notice . . . may grant . . [a termination] petition if it finds, upon clear and convincing evidence, that the termination is in the best interest of the child and that . . . with respect to a nonconsenting parent, over an extended period of time, which . . . shall not be less than one year . . . there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interests of the child." The absence of a parent-child relationship involves a situation where the child has never known his parent so that no relationship ever developed, or where the child has clearly lost that relationship so that despite its existence, it now has been completely displaced; our Supreme Court has stated: "`[i]n either case the ultimate question is CT Page 4139 whether the child has no present memories or feelings for the natural parent.'" In re Juvenile Appeal (Anonymous), 181 Conn. 638
645-46 (1980); In re Shannon S., 41 Conn. Sup. 145, 158
(1989). A troubled relationship between the parent and child is not a basis for termination of parental rights; In re Juvenile Appeal (Anonymous), 177 Conn. supra at p. 671; In Re Juvenile Appeal (84-6), 2 Conn. App. 705, 708-09 (1984); however, in applying the statute, "common sense" is to be utilized and "bizarre results" are to be avoided. In re Juvenile Appeal (84-6), supra at p. 709. Accordingly, the feelings of the child for the natural parent means feelings of a positive nature. In re James T., 9 Conn. App. 608, 616 (1987); In re Juvenile Appeal (84-6), supra at p. 709; In re Shannon S., supra at p. 159. It is true that Corey W. was very young while living with his natural father, and that there were incidents of accidental injuries to the child; however, on the status of the evidence, the court is unable to find, by clear and convincing evidence, that Corey W. retains no specific memories of, or positive feelings for, Clark W.
The court cannot conclude, on the limited evidence presented, applying a clear and convincing standard of proof, that petitioner has established no ongoing parent-child relationship as a statutory ground for the termination of the parental rights of Clark W. to the child, Corey W.; therefore, that particular statutory ground is hereby ordered dismissed.
Disposition
General Statutes Section 17a-112 (b) permits the court to grant a petition to terminate parental rights only upon a determination, based on clear and convincing proof, that to terminate would be in the best interests of the child. Additionally, it is statutorily required that the court consider the six factors set forth in Section 17a-112 (d). Evidence was last received in this case on February 6, 1992.
Corey W. has been doing exceedingly well in a loving, nurturing, specialized foster home. The child's mother has acknowledged, painfully, that she is not emotionally equipped to raise this problematic child and has consented to termination of her parental rights. The father has not seen, or had any contact with, the child in almost two years; the father has not presented any plan for the child. Corey W. is approaching five years of age. Under the totality of the circumstances, a permanent, loving, nurturing home is in this child's best interests; the necessary permanency and certainty in the child's home situation can be appropriately realized through a termination of parental rights, thereby freeing the child for adoption, which is the DCYS plan. It hereby found, applying a CT Page 4140 clear and convincing evidence standard, that termination of the parental rights to Corey W. is in the child's best interest.
The court has carefully considered the factors enumerated in Section 17a-112(d)(1) through (6), and hereby finds, on clear and convincing evidence, the following:
(1) Respondent/father's precise whereabouts were unknown, and he has maintained no regular contact with DCYS; therefore, no services could be put in place relative to any reunification with Corey W.
(2) Similarly, given the father's absence court orders were not entered pertaining to him.
(3) The evidence presented did not address any feelings or emotional ties of the child with respect to respondent/father, any guardian of the child, or any person who has exercised physical care, custody or control of Corey W., although a fair inference drawn from the totality of the information is that the child has developed a loving positive relationship with the specialized foster parents.
(4) Corey W. was born on June 30, 1937; he is approaching five years of age. Considering the child's age, the protracted period of time during which he has been in foster placement, and the child developmental needs, domestic permanency and certainly is clearly consistent with this child's best interests.
(5) Clark W. has had no contact with his son since he returned the child to respondent/mother around Easter, 1990; the father has not been in regular contact or communication with DCYS during the period of the child's commitment and, from the evidence, has made no significant effort whatsoever to adjust his circumstances, conduct, and conditions in any manner which would render the return of Corey W. to him consistent with the child's best interests. As stated, respondent/father's whereabouts have been unknown.
(6) There is no evidence that Clark W. has been prevented in any way, or by anyone, or by any circumstance, from maintaining a meaningful relationship with Corey W.
Petitioner has met its burden of proof by clear and convincing evidence; the best interests of Corey W. will be served by freeing him for adoption, and by provision of a loving, nurturing, permanent home.
It is found, by clear and convincing evidence, that CT Page 4141 termination of parental rights is in the best interest of Corey W.; and, that with respect to respondent/father, Clark W., over an extended period of time which is not less than one year, a statutory ground has existed for the termination of parental rights.
The petition to terminate the parental rights of Cynthia K. and Clark W. respecting the child Corey W. is hereby Granted; and, the Department of Children and Youth Services is appointed Statutory Parent for the said Corey W.
In accordance with General Statutes Section17a-112(i), a case plan report shall be submitted to this court by the Commissioner within ninety (90) days, and thereafter as the court may require, but no less often than annually.
MULCAHY, J.