TOWN OF MARLBOROUGH *vs.* CHARLES F. SISSON AND OTHERS.

A statute of Vermont, in force in 1797, provided that every healthy, able-bodied person, residing within that state, and being of peaceable behavior, should be deemed to be legally settled in the town in which he should have first resided for. the space of one year. Held, that in determining whether a person was healthy and able-bodied within the intent of the statute, the test is not his ability or inability during the time to perform ordinary labor and thereby support himself and family, but that a person is to be deemed not to have been healthy and able-bodied, who during the year received an injury which afterward resulted in permanent disability, although not incapacitating him during the year for ordinary labor.

A former verdict for the defendants in this case having been set aside (23 Conn., 401,) it was tried again to the jury at the term of the superior court holden in the county of Hartford, in September, 1856, when a verdict was rendered for the plaintiffs, and the defendants moved for a new trial for error in the charge of the judge. The charge and all the facts of importance appear sufficiently in the opinion of the court.

*Bulkeley* and *W. D. Shipman*, for the defendants.

*T. C. Perkins* and *Hubbard*, for the plaintiffs.

HINMAN, J. It was an important question on the trial of this case, whether one Samuel Ingraham, between the years 1797 and 1800, while he was residing in the town of Weybridge, in the state of Vermont, was, for one whole year, a healthy and able-bodied person, within the meaning of the statute of Vermont, then in force, which provided that every such person residing within the state, and being of peaceable behavior, should be deemed and adjudged to be legally settled in the town or place in which he should have first resided for the space of one whole year. Stat. of Vt., vol. 1, pp. 383, 384.

The defendants claimed to have proved that within a month after the said Ingraham removed into Weybridge, he

received an injury to his leg which permanently weakened it, and before he had resided there a year he received another injury to the same leg, by means of which it became crooked and stiff, so as permanently to disable him, and render him incapable of gaining a settlement under this clause of the statute of Vermont.

The plaintiffs claimed that whatever injury Ingraham received during the first year of his residence in Weybridge, was casual and temporary in its character and effects, and that it did not permanently incapacitate him from labor, or from supporting himself and family.

Ingraham first removed to Weybridge in April, 1797, and he testified that in March, 1798, he fell through the snow and injured his knee, but that the accident did not prevent his pursuing his labor as usual; that he subsequently, but after he had resided there more than a year, received other injuries which increased his lameness so much that since the year 1804 he has always been compelled to walk with a staff.

The defendants requested the court to charge the jury that the question was not whether Ingraham could by his labor support himself while so residing in Weybridge, but whether he was in fact an able-bodied man, and that, if the injury was sustained at the time and in the manner represented by Ingraham, and afterward, after said years' residence in Weybridge, his limb became permanently sore and lame in consequence of said injury, and so continued, said Ingraham, under said statute of Vermont, did not acquire a settlement in said Weybridge.

The proposition involved in this request is, that Ingraham ceased to be able-bodied from the time he received an injury which eventuated in a permanent disability, although the injury did not at first prevent his pursuing his labor as usual. We think this is a correct proposition, which should have been sanctioned by the court. There are many diseases which are permanent and fatal in their character, which do not at first incapacitate the persons afflicted with them from labor. But surely such persons can not be said to be able-bodied; and so there may be injuries which at first appear to

be slight and temporary, and do not affect the ability to labor, but which in reality are so severe as eventually to ripen into a permanent disability. We think persons thus situated can, at no time after such an injury, be said to be able-bodied.

It was said, however, that there was no evidence before the court which laid the foundation for the charge claimed by the defendants. This is a fact which, if true, ought to appear from the motion. The motion shows the claim made by the defendants, and the charge of the court upon that claim. Ingraham himself also testified to receiving an injury within the first year of his residence in Weybridge, and although he attributed the permanent lameness which he says came upon him a few years afterwards to subsequent injuries, yet we can not say but the jury might have thought differently even upon the facts which he testified to, nor can we say that there were not other facts and circumstances which are not disclosed in the motion, which showed clearly that the defendants' claim was well founded.

It was said also that the court did charge the jury in substance as claimed by the defendants. But the court instead of charging the jury as the defendants requested, told them that the words "healthy" and "able-bodied" had reference to the ability of Ingraham to labor, and taken in connection with the subject matter of his settlement, that they had reference to his ability to labor for his support; and the question is stated to be whether he was able to labor as men do ordinarily, without being incapacitated by any permanent injury. Now ability to labor as men do ordinarily is undoubtedly evidence that a man is able-bodied, but it is not conclusive, or the only evidence on the question; and the difficulty with the charge is that it makes this species of evidence conclusive of the principal fact which it merely tended to prove.

The defendants made the point that in charging the jury in respect to the bills for medical attendance rendered by Doctors Parsons and Williams to the family of Ingraham, while he was residing in East Haddam, the judge instead of saying that if those services were not rendered upon the

request of Marlborough or East Haddam, or were not authorized or subsequently ratified by either of said towns, the aid so furnished would not prevent him from gaining a settlement in East Haddam, so omitted to mention the town of East Haddam as to leave the impression that aid furnished to Ingraham as a pauper by that town while he was residing there, would not prevent his gaining a settlement there by such residence.   This was undoubtedly a mistake, but it so arose that the real meaning of the court could hardly have been misunderstood by the jury, and it is merely alluded to because, the point being made, it ought not to be understood that we intend to sanction the language used by the judge as verbally accurate and correct.   Without therefore determining what we might feel bound to do on account of this accidental omission, it is sufficient to say that upon the main point presented in the motion, we think there should be a new trial granted.

In this opinion the other judges concurred.

New trial advised.