[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case concerns the State's effort to terminate the Parental Rights of Kevin and Patricia with respect to their daughter Kelly, B. CT Page 12005
Kelly was born January 28, 1992 and is as of the date of this decision 2 years and 7 months of age.
Kelly has lived nearly all of her life in foster care. An order granting the Department of Children and Families custody of Kelly was granted by the court on March 6, 1992; when Kelly was approximately 6 weeks old. Kelly had left the hospital in her parents custody; but prior to the court order of March 6, 1992, had been voluntarily placed with DCF. The initial placement of the child was necessitated by the psychiatric hospitalizations of both parents.
Kelly was born with multiple handicaps of a physical, emotional and psychological nature. Kelly has a unique and severe spectrum of disorders. Kelly has a Pervasive Neurological Deficit with resulting significant developmental delays in all areas of functioning.
Kelly is a child that must be awakened less she sleep around the clock. Kelly must be stimulated to undertake any activities or she will lapse into an autistic like state of inactivity. The limited speech and mobility functioning which Kelly has developed are a result of the extraordinary care provided her by her foster parents.
Kelly's parents have had an ongoing violent and dysfunctional relationship; which has produced Kelly and a younger daughter born in June of 1993. The younger child who is developmentally normal remains in her mother's care.
Kelly's birth was followed by violence, domestic chaos and the psychiatric decompensation of her parents.
The violence by the father directed towards the mother resulted in bruising, black eyes and a broken ankle. The mother reports assaults by the father which included punching with a closed fist, kicking and an attempted electrocution.
The relationship between the parents persisted for the first two years of Kelly's life despite arrests, court orders of a protective nature and counseling efforts.
Kelly's father has an extensive history of psychiatric problems including two periods of psychiatric hospitalization following Kelly's birth. These stays included a month at Elmcrest CT Page 12006 Hospital and two months between April and June 1992 at Connecticut Valley Hospital. This man also has a criminal record relating to violent assaultive behavior, including a period of incarceration from October 15, 1993 until July 8, 1994. His diagnosis is of a psychotic condition with paranoid schizophrenia; poly substance abuse disorder, sociopathic personality disorder and spouse abuser disorder. The father also had intellectual limitations with an I.Q. in the borderline range. The father functions in a residually psychotic state. At trial he testified to hearing internal voices which on occasion instructed him to hurt himself and others. In a sincere effort to control himself he takes many medications including psychotropic medicine.
Kelly's mother is an intellectually limited person with a dependent personality disorder. She also has impaired coping skills, impaired judgment, and an inability to organize her life to deal with everyday life stressors. The mother also suffers from a battered wife syndrome, which leads her to submit to dangerously violent relationships.
The parents were divorced during the period of the father's most recent incarceration in June of 1994.
The Order of Temporary Custody of March 6, 1992 was superseded by a commitment of Kelly to the custody of the DCF on November 19, 1992. This commitment was based on an adjudication that Kelly was uncared for pursuant to C.G.S. § 46b-129(d) in that she had special needs which could not be met in her parent's home. Such adjudication was made after the parents entered nolo contendere pleas to such charge.
The commitment was for 18 months from November 19, 1992 through May 19, 1994.
DCF filed the TPR petition which is the subject of this decision on January 20, 1994. During the pendency of the TPR petition, Kelly's commitment was extended for a period of 18 months from May 19, 1994.
The parents filed a petition to revoke the initial commitment by petitioning the court on May 31, 1993. This petition was withdrawn on September 3, 1993.
The termination of parental rights petition alleges that grounds of failure to rehabilitate after a finding that the child CT Page 12007 was uncared for.
C.G.S. § 170-112(b)(2) provides that the parental rights of a child committed to DCF, may be terminated where the state proves by clear and convincing evidence that ". . . the parents of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child; . . .". Pursuant to C.G.S. § 17a-112 the state further alleges that this ground has existed for at least one year, and that the termination of parental rights is in the best interests of the child.
The termination of parental rights trial commenced July 21, 1994 and continued on July 22, 1994, at which time it concluded. The witnesses at the trial included Dr. Richard Sadler, Ms. Fran Couture, Mr. James Heintz and both respondents. Dr. Sadler testified as an expert psychiatrist. Ms. Couture an early intervention worker testified concerning the condition of the child Kelly. Mr. Heintz, a DCF social worker, testified as to the history of the case with DCF.
The exhibits at trial consisted of Exhibit #1 Dr. Sadler's Psychiatric Evaluation of April 3, 1994; Exhibit #2 October 14, 1993 Service Agreement; Exhibit #3 DCF Termination Study; Exhibit #4 September 11, 1992 form signed by respondent Kevin B; Exhibit #5 November 19, 1992 Expectation signed by respondent Patricia B.; Parent Aide Program Service Agreement for July 10, 1993 — December 10, 1993; Exhibit #7 July 22, 1994 Note from Dr. Carre re: Kevin B.
Each parent had a separate court appointed attorney and a separate guardian-ad-litem representing them at the trial.
The court concluded from observing the parents at trial, and from the testimony of Dr. Sadler that both parents were competent throughout the course of the proceedings.
In the absence of parental consent the termination of parental rights necessarily involves two distinct phases; the adjudicatory and dispositional phases, Rules of Practice § 1042, 1044 and 1049. Procedurally as in this case, the evidence as to both issues may be heard at the same trial; with the court first determining if the CT Page 12008 state has proven a statutory ground for adjudication before consideration of the dispositional question. State v. Anonymous,179 Conn. 155, 172-173 (1980); In re Juvenile Appeal (84-B),192 Conn. 254, 262 (1989); In re Valerie B, 223 Conn. 492, 511 (1992).
The state's burden of proof on a termination of parental rights petition is clear and convincing evidence that the termination is in the best interests of the child and that the statutory condition alleged in the petition has existed for at least one year. In re Joshua, 26 Conn. App. 58 (1991), C.G.S. § 17A-112(b).
There is no dispute that Kelly was adjudicated uncared for on November 19, 1992 and committed to the custody of DCF. She has remained in the custody of DCF since that date.
C.G.S. § 17a-112(b)(2) defines "personal rehabilitation" as "the restoration of a parent to his or her former constructive role as a parent."
The original commitment was brought about by the parents inability to provide their daughter a home; because of her special needs.
In determining the rehabilitation success of an individual parent, the court should consider the factors which led to the initial commitment and the specific expectations. In re Michael M,29 Conn. App. 112, 126 (1992).
The court must analyze the parent's rehabilitative status as it relates to the needs and age of the particular child, and determine that restoration must be foreseeable within a reasonable time. C.G.S. 17-112(b)(2) In re Luis C, 210 Conn. 157, 167; In reJoshua Z, 26 Conn. 58, 64 (1991) cert. denied 221 Conn. 901 (1992).
The parents in this case each in many ways demonstrated good intentions as to the child and court ordered expectations. This was especially the case with the mother. One area of non-compliance was the continuation of an abusive relationship between the parties; though divorced at the time of trial, they appeared to be mutually interested in further contact, which would be predictable in view of their other child remaining in the mother's custody.
Each of the parents has clearly failed the essential CT Page 12009 expectation that they develop and demonstrate the ability to care for the child.
The child is severely disabled and the parents total lack of insight combined with poor parenting skills; leaves no doubt that the parents remain unable to provide Kelly a home.
The evidence further demonstrates that the parents each lack the capacity mentally to develop the skills discipline and devotion required to parent Kelly.
The child is now nearly three and requires the security of a permanent home.
The state has proven the alleged statutory ground for termination by clear and convincing evidence as to each parent, and that such condition has existed for more than one year.
The court must now address the issue of whether the termination of parental rights is in the best interest of the child, In re Valerie D, 223 Conn. 492, 511 (1992).
Kelly is two years and nine months of age with profound and severe disabilities, which require an extraordinary level of care. She has been in foster care since she has been five weeks old.
The foster parents have shown incredible devotion to this child and are responsible for the positive development which the child has experienced. They are interested in adopting the child and such a union is critical for the child's sense of security and hope for the future.
Kelly's best interest would unquestionably be served by the termination of parental rights, in order to free her for adoption by the foster parents.
In any nonconsensual termination of parental rights, the court, pursuant to C.G.S. § 17a-112(d), must make finding as to seven factors.
"The timeliness, nature and extent of services offered as provided to the parent and the child by an agency to facilitate the reunion of the child with the parent."
From the outset of the case both parents were referred for CT Page 12010 psychiatric treatment and psychological counseling.
The mother was provided parent aid assistance and parenting classes.
The father was referred for counseling including a "Men's Anger Group. "
The mother was referred for housing assistance and for legal assistance to protect herself from the child's father.
Visitation between the parents and child was facilitated with scheduling and transportation.
"Whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the Federal Child Welfare Act of 1980, as amended."
DCF made reasonable efforts by providing services and referrals to the parents and child.
"The terms of any court order entered into and agreed upon by any individual or agency and the parent, and the extent to which the parties have fulfilled their expectations."
Court ordered expectations were entered on November 19, 1992 as to each parent. The mother met the terms of expectations as did DCF. The father failed to meet his expectations by failing to cooperate with counseling and by criminal conduct towards the child's mother. This criminal conduct led to a substantial period of incarceration for the father.
"The feeling and emotional ties of the child with respect to his parents, any guardian of his person and any person who had exercised physical care, custody as control of the child for at least one year and with whom the child has developed significant emotional ties."
The father is a stranger to the child.
The child recognizes her mother as a friendly adult, but not as a parent.
The child views the foster parents as her only parents. The child has very strong emotional ties to the foster parents. CT Page 12011
"The age of the child."
Kelly was born on January 28, 1992. She is 2 years and 9 months old.
"The efforts the parent has made to adjust his circumstances, conduct or conditions to make it in the best interest of the child, to return to his home in the foreseeable future including but not limited to: (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent provided that the court may give weight to incidental no situations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child."
The mother has made real and significant efforts to adjust her life. Including eventually leaving and divorcing the child's father. She also consistently visited with the child and cooperated with counseling, parent aides and parenting classes. Unfortunately these efforts were insufficient to prepare her to care for Kelly.
The father made sporadic efforts to change his circumstances. He attempted counseling and is currently under psychiatric treatment. His continuing history of violence and psychotic thinking demonstrate the limited success of these efforts.
The father has not maintained consistent contact with Kelly or her guardians.
"The extent to which a parent has been prevented from maintaining a meaningful relationship by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."
The mother has not been interfered with by economic circumstances or the unreasonable acts of any other person. Her mental limitations and the child's special needs prevented the reunification.
The father was prevented from seeing his child on a regular basis by restraining orders and periods of incarceration. Such acts in view of his violent acts were not unreasonable. CT Page 12012
The parental rights of Kelly B's mother and father are terminated.
The Commissioner of DCF is appointed statutory parent of the child and is ordered to file with the court within 90 days of the date of this decision; a report outlining the adoption planning for this child.
Robert F. McWeeny, Judge