MEMORANDUM OF DECISION
History
This is an action brought by the Department of Children and Families (DCF) on behalf of twins, Sharon and Anthony (DOB 7/5/92) for the termination of the parental rights of the female biological parent, hereinafter referred to as "Debbie", and the male biological parent, hereinafter referred to as "Mark". All parties were ably represented by counsel. The biological parents did not appear for trial, but were aware of the pendency of the proceedings and had at various times been in communication with their respective counsel.[2] The case was tried over two days with a thorough and complete, yet economical style of presentation by all counsel that is often the hallmark of very CT Page 4186-F effective advocacy.
The court heard testimony from the DCF social worker Lea Santello through whom the Social Study for Termination of Parental Rights was placed into evidence. The findings of this study (State's Exhibit #3) were essentially uncontroverted and which study the court finds to have great credit and reliability. The court also heard from the children's aunt, who is raising one of the children's sibling, and from Dr. David Mantell, who did two separate evaluations of the biological parents and the children. The findings and recommendations contained in the report of Dr. Mantell (State's Exhibits 1 and 2), while the subject of extensive cross-examination, were not weakened and were, ultimately, accepted by the court. The court also received into evidence documents submitted by the State and by counsel for Debbie which the court finds to be generally consistent and corroborative of all other evidence submitted.
Debbie is presently 35 years of age. Between 1976 and 1992 Debbie has had seven children by three different men. None of the children are presently in her care. Four of the seven children were sired by Mark. All of the children were adjudicated neglected in that they were denied proper care and attention, six of these adjudications, including for Sharon and Anthony, occurred on October 20, 1993. Fortunately, most of these children are living with the paternal grandparents of the children, unfortunately, the extended families have been unwilling or unable to care for the two twins who are the subject of this petition.[3] The male biological parent of these children has no motivation to parent these children, notwithstanding his seeming ability to do so. He has no known physical impairments, he is gainfully employed and could provide adequate shelter if he had wished to do so. He has never offered a plan for the children's care nor independently visited with the children.
Adjudication
The first ground asserted for termination is that after the neglect adjudication in October of 1993, Debbie and Mark have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age[s] and needs of the child[ren], they could assume a reasonable position in the life of these children. General Statutes § 17a-112(b)(2). CT Page 4186-G
The basis for the prior adjudications remains today. The court finds by clear and convincing evidence, that Debbie has a substance abuse problem that is chronic and that this problem does not respond to treatment. The court finds further that despite consistent and generous offers of treatment by DCF, there is no evidence of a sustained recovery. With respect to Mark, the court finds that he is a psychologically limited person with a modest criminal and substance abuse history. Mark is wholly unable or unwilling for reasons not known to the court, to take any interest in, or to act as, a parent to these children. Neither parent is, or has any prospects in the reasonably foreseeable future, of being a parental resource for these children. Gen. Stat. 17a-112(b)(2). In re Luis C, 210 Conn. 157,167 (1989); In re Joshua Z, 26 Conn. 58, 64, 597 A.2d 842 (1991)cert. denied 221 Conn. 901 (1992).
The court further finds that the DCF has demonstrated by clear and convincing evidence that an additional ground has been proven, to wit, that neither parent has an ongoing parent/child relationship, which is defined as the relationship that ordinarily develops as a result of a parent having met on a continuing day to day basis the physical, emotional, moral and educational needs of the children, and to allow further time for the establishment of the parent/child relationship would be detrimental to the best interests of the children. Gen. Stat.17a-112(b)(4). These parents have been physically, emotionally and spiritually unavailable for these children.[4] In support of the court's ruling the court has considered the following principles of law. An absence of a parent-child relationship contemplates situations where a child has never known her or his parents so that no relationship ever developed between them or where the child or children have definitely lost that relationship so that despite its former existence it now has been completely displaced. In re Juvenile Appeal (Anonymous),181 Conn. 638, 645, 436 A.2d 290 (1980); In re Juvenile Appeal(Anonymous), 177 Conn. 648, 670, 420 A.2d 875 (1979). Proof of a lost or displaced relationship depends upon whether the child or children have any present memories or feelings for the natural parent. In re Juvenile Appeal (Anonymous), supra,181 Conn. at 646;In re Juvenile Appeal (Anonymous), supra, 177 Conn. at 670. Later decisions have narrowed the initial inquiry. Now the search is to determine if the child or children have present memories and positive feelings. In re Rayna M., 13 Conn. App. 23, 34-35,534 A.2d 897 (1987); In re James T., 9 Conn. App. 608, 616,520 A.2d 644 (1987); In re Juvenile Appeal (84-6), 2 Conn. App. 705, CT Page 4186-H 709, 483 A.2d 1101 (1984), cert. denied, 195 Conn. 801,487 A.2d 564 (1985). The existence of positive feelings, and presumably present memories, depends upon the viewpoint of the child. See Inre Rayna M., supra, 13 Conn. App. at 35; In re Juvenile Appeal(84-6), supra, 2 Conn. App. at 709. As will be developed later, these children have no content specific memory of either Debbie or Mark as a parent, that is, as a person who cumulatively, prolongedly, and ungrudgingly provides nurturing, care, attention and affection for a child on a daily basis.
The court finds that these two grounds have existed for more than one year. With respect to the allegation regarding acts of commission or omission in violation of § 17a-112 (b)(3), the court grants the respondent Mark's motion to dismiss this ground.
Mandatory Findings
Having determined that grounds for terminating the parental rights exist, the court must then consider the seven factors set forth in § 17a-112(d) as amended.
(1) The timeliness, nature and extent of services offered or provided the parents and the children by an agency to facilitate reunion. The court finds that an inordinate number of services have been offered and provided, to little avail, in this case. Those services include:
A. Intensive DCF long term social work, including case management and visitation services.
B. Yale New Haven Hospital
 1. Out-patient drug treatment 2. Yale Child Study Center
C. Milford Mental Health Unit
D. Gaylord Hospital-inpatient and outpatient services for substance abuse
E. Dutcher Hall substance abuse program
F. MAAS Outpatient drug program
G. Coordinating Counseling for Children in Crises (CCCC) CT Page 4186-I
H. Meriden Partial Hospitalization program
I. APT foundation program
J. Lastly, as recently as March 1996, Debbie completed successfully, yet another program known as Connection House, a residential substance abuse program to which Debbie was admitted on September 14, 1995 upon her release from Niantic Women's Correctional Center. A report dated February 6, 1996 (Respondent's Exhibit D) indicates:
 . . . her self reported life style is characterized by its drug orientation, lack of goals, and inability to manage the stress of daily living without resorting to alcohol and drug use. Her behavioral patterns reflect a lack of stability in her finances, employment, education and interpersonal relationships. Her role as a mother to, her children, reflect a lack of stability, as evidenced by DCF involvement and an arrest for Risk of Injury to a Minor.
It is indeed curious to note that like so many programs before, Connection House noted her continued improvement since entering treatment and concluded by noting "The prognosis for her continued, on going recovery from substance abuse is good." She successfully completed the program on March 18, 1996. On March 22, 1996 she had a DCF sponsored visit with her children and has subsequently reverted to her prior habit of disappearing from her children's life whenever she was abusing cocaine.[5]
(2) Whether the agency has made reasonable efforts to reunite the family pursuant to the requirements of the federal Child Welfare Act of 1980 as amended. The court notes that the agency (DCF) has consistently offered and provided services as above noted. When the twins were first reported to have been left alone locked in a room while Debbie went off to satisfy her need for drugs, DCF allowed Debbie and Mark protective supervision in the home and offered services to keep the family intact. The arrangement lasted approximately six weeks before the children were surrendered to DCF for voluntary placement by the parents in December 1993. The children have been in foster placement since that time. Neither parent has made a proposal for the children's care nor a request for their return. CT Page 4186-J
(3) With respect to court orders, service agreements and expectations. No court orders were made or entered into except with respect to visitation. Expectations were prepared for the parents which required no substance abuse. Debbie has failed to comply with the expectations in many regards such as keeping DCF advised of her whereabouts, keeping appointments, maintaining adequate housing and avoiding arrests and convictions. Mark's principal failure as a parent relates to his lack of interest in caring for the children. He is unwilling to visit the children or have anything to do with them unless Debbie is with him to parent. Since Debbie has been unavailable as a parent, so too, has Mark.
(4) The feelings and emotional ties of the children with respect to the parents and other caretakers. These issues have been fully explored on cross examination with the social worker and Dr. Mantell. The court finds specifically that there is no parent/child relationship as that concept is legally defined. The court further accepts the statement of Dr. Mantell that there was no evidence that the children had any active memory of Debbie as a mother. In light of the findings regarding no on-going parental relationship between the respondents and the children, further discussion is unnecessary.
(5) The court has considered the ages of the children, both nearly four, and the great length of time in the children's life's that they have been in foster care. Permanency planning is essential. The children have had three foster placements. They have bonded to two foster families and suffered the loss and separation from their birth parents and a very devoted and capable foster family. No child should suffer the multiple losses that these children have suffered.
(6) The respondents are unable to adjust their circumstances to make reunification in the foreseeable future likely. The parents are no nearer rehabilitation today than they were on October 20, 1993 when the children were initially adjudicated neglected. Neither parent has ever been a reliable caretaker for these children.
(7) The court finds that the respondent's conduct alone has prevented them from maintaining a meaningful relationship with these children. No act by DCF or any individual has prevented them from reformation, rehabilitation and reunification. While counsel for Debbie urges the court to find that DCF attempted to CT Page 4186-K prevent visitation and was overruled by order of the court, this court finds after hearing the testimony of the social worker and Dr. Mantell that, in retrospect, visitation may have been improvidently ordered after the petition for termination was filed. The resumption of visitation resulted in regression and distress to the children and more importantly, the loss of pre-adoptive foster parents who were closely bonded to the children. The lack of a meaningful relationship between the biological parents and the children is the result of Debbie's self-indulgent abuse of cocaine and alcohol and Mark's lack of interest in the children. Neither biological parent shows any sustained motivation to parent whatsoever. Debbie has a nominal interest to visit when she is sober. Ironically, Dr. Mantell found her to be a nice playmate to the children and that she would probably be an adequate parent if she wasn't drug addicted and if she were with a better husband/boyfriend. He concluded that "(Debbie's). case has a very poor prospect for a happy ending."
Based upon the testimony presented and the exhibits offered into evidence, the court has found by clear and convincing evidence that the biological parents have failed to achieve a degree of personal rehabilitation following the adjudication of neglect for Sharon and Anthony, that would encourage the belief, that within a reasonable period of time, considering the age and needs of the children, that they could assume a responsible position in the lives of these children. The court further finds that there is no ongoing parent/child relationship between these parents and the children.
The court finds that these grounds have existed over an extended period of time which is greater than one year. The court finds, based upon the testimony and evidence presented, that it would be in the children's best interest to terminate the parental rights of Debbie and Mark. at this time. This finding is made after considering the children's sense of time, their need for a secure and permanent environment, the relationship that the children have with their foster parents, and the totality of circumstances that the termination of parental rights is in the children's best interest. In re Juvenile Appeal (Anonymous,
supra, 177 Conn. at 667-68. See generally, J. GOLDSTEIN, A. FREUD A. SOLNIT, BEYOND THE BEST INTERESTS OF THE CHILD 99 (1979).
ORDER
Having considered the foregoing facts it is found by clear CT Page 4186-L and convincing evidence to be in the best interest of Sharon and Anthony to terminate the parental rights of their biological parents so that they may be placed in adoption without further delay. It is therefore ordered that the parental rights of Debbie and Mark be and they hereby are terminated. It is further ordered that the Commissioner of Children and Families be appointed the statutory parent for the purpose of placing the children forthwith in adoption and to report to this court in writing as to the progress toward that end no later than ninety days from the date of this judgment. If adoption has not been finalized within six months from the date of the judgment, the Commissioner is further ordered to submit a motion to review a plan for terminated children no later than that date to ensure compliance with federal law which mandates judicial review of every child in the guardianship of this state at least every eighteen months.
APPEAL
The parents have twenty days from the date of this judgment in which to take an appeal. If an appeal is specifically requested by a parent and trial counsel is willing to continue representation, this court will appoint such attorney to act as appellate counsel, at public expense if the appellant is indigent, until all appellate process is completed. Practice Book § 4017. With respect to the respondent Mark, a review of his financial condition shall be undertaken before any further public expense is incurred for court appointed counsel. If, however, in the exercise of professional judgment as an officer of the Superior Court, the attorney declines to perfect such appeal because, in the attorney's opinion, it lacks merit, such attorney is not required to do so but may instead simultaneously file a timely motion to withdraw and another motion to extend the appellate period to the full maximum of forty days as permitted by law. Practice Book § 4040. Such motions, if unopposed and financially warranted, will be granted ex parte and a new attorney appointed to review this record and make an independent determination of the merits of such appeal. If the second attorney determines it lacks merit, the reason for this opinion shall be promptly submitted to the court in writing. The party seeking the appeal will then be informed by the court clerk of the balance of the forty days in which to secure counsel for the purpose of taking such appeal, who may, if qualified, be appointed by the court to be compensated by the state. Douglas v.California, 372 U.S. 353, 38 S.Ct. 814, 9 L.Ed.2d 811 (1963);Fredericks v. Reincke, 152 Conn. 501 (1965). CT Page 4186-M
Foley, P.J.